# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JASON Z.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK J. BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:25-cv-06084-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Jason Levent Zapata appeals the decision of the administrative law judge ("ALJ") denying his claim for Supplemental Security Income benefits. For the reasons set forth below, the Court concludes that the ALJ's residual functional capacity finding is not supported by substantial evidence and that the record must be further developed. Accordingly, the Court reverses the ALJ's decision and remands this matter for further administrative proceedings.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I.    BACKGROUND

Plaintiff filed an application for Supplemental Security Income on July 26, 2022, alleging disability beginning on January 1, 1999. See Dkt. 11, Administrative Record ("AR") 273.[2] He subsequently amended his disability onset date to June 16, 2022. See AR 32. His claim was denied at the initial level and on reconsideration. See AR 138-48. He requested a hearing before an ALJ, see AR 158, and the hearing was held on April 9, 2024, see AR 92-113. Plaintiff, represented by counsel, testified, as did a vocational expert. See id. Following the hearing, the ALJ denied Plaintiff's claim on May 28, 2024. See AR 32-54.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. See AR 33. At step two, the ALJ found that Plaintiff had the following severe impairments: "learning disorder; mood disorders; anxiety disorder; psychotic disorder; borderline intellectual functioning; attention deficit hyperactivity disorder; post-traumatic stress disorder; right shoulder labral and tendon tears with bursitis; and obesity." AR 34. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 37.

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined by 20 C.F.R. § 416.967(c) with the following exertional and non-exertional limitations:

---

[2] Citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

> [He] can frequently push and pull with the right upper extremity;
> can frequently climb ladders, ropes or scaffolds; should have no
> exposure to hazards, as defined in the DOT and SCO; can
> understand, remember and carry out simple instructions; can have
> occasional interactions with supervisors and co-workers but should
> have no interactions with the public; and can deal with occasional
> changes in a routine work setting.

AR 40.[3] The ALJ found that Plaintiff had no past relevant work. See AR 52.
The ALJ relied, however, on the vocational expert's testimony to conclude
that—given Plaintiff's age, education, and RFC—he could perform other jobs
that existed in significant numbers in the national economy. See AR 52-54.
Thus, the ALJ found that Plaintiff was not disabled. See AR 54.
The Appeals Council denied review of the ALJ's decision. See AR 1-6.
Plaintiff then sought judicial review in the instant action. See Dkt. 1.

## II.    LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not
supported by substantial evidence or is based on legal error." Luther v.
Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the
substantial-evidence standard, the district court looks to the existing
administrative record and determines "whether it contains sufficient evidence
to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct.
1148, 1154 (2019) (citation omitted) (cleaned up). "Substantial" means "more
than a mere scintilla" but only "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Id. (citation omitted). This
threshold "is not high" and "defers to the presiding ALJ, who has seen the
hearing up close." Id. at 1154, 1157. "Where evidence is susceptible to more

---

[3] Section 416.967(c) defines "medium" work as "work involv[ing] lifting
no more than 50 pounds at a time with frequent lifting or carrying of objects
weighing up to 25 pounds."

than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.   DISCUSSION

The parties dispute: (1) whether substantial evidence supports the ALJ's RFC finding; and (2) whether the ALJ erred in rejecting Plaintiff's subjective complaints regarding the severity of his mental health-related symptoms. See Dkt. 12 at 4-14.

### A.   Plaintiff's RFC

Plaintiff contends that the ALJ erred in assessing his RFC. See Dkt. 12 at 4-9. Specifically, Plaintiff argues that the ALJ improperly failed to include any limitations relating to fine or gross manipulation in the RFC determination, despite medical evidence in the record supporting such restrictions for his right hand. See id. Plaintiff further contends that the ALJ improperly relied on the results of magnetic resonance imaging ("MRI") to conclude that no manipulative limitations were warranted without first obtaining a medical professional's interpretation of those results. See id. Plaintiff seeks a remand to allow the ALJ to re-evaluate his RFC. See id. at 9.

#### 1.   Relevant Background

On February 24, 2023, over six months after he applied for benefits, Plaintiff underwent an MRI for his right shoulder, which he claimed had been in pain "for several months." AR 929.[4] The results reflected the following: (1) "labral tear anterosuperiorly with adjacent 1.5 cm paralabral cyst"; (2) "low-grade intrasubstance partial tear of upper subscapulais tendon"; and (3) "minimal subacromial-subdeltoid bursitis." Id.

Less than two months later, Plaintiff underwent a consultative physical

---

[4] Plaintiff did not identify shoulder pain as one of his medical conditions in his initial application for supplemental security income. See Dkt. 11-7 at 3.

examination by Dr. Dennis Shults. See AR 938-42. When the exam was conducted, the results of Plaintiff's MRI were not yet available. See AR 938. Dr. Shults observed, among other things, that Plaintiff had "pain but full range of motion on the right [shoulder]" and that his "range of motion on the left [shoulder] [was] grossly within normal limits." AR 940 Additionally, Dr. Shults observed that Plaintiff's range of motion in his elbows and wrists, as well as his joint flexion in his hands, was "grossly within normal limits bilaterally." Id. Dr. Shults found that Plaintiff was capable of medium work but could only frequently use his hands to "do fine and gross manipulation" and could only frequently push and pull. AR 941-42.

On May 8, 2023, a state agency physician, Dr. Vaghaiwalla, reviewed Plaintiff's medical records and concluded that he had no severe physical impairments. See AR 142. According to Dr. Vaghaiwalla, Plaintiff had normal strength and unrestricted range of motion. See id.

### 2.    The ALJ's Decision

As noted above, the ALJ found that Plaintiff had the RFC to perform medium work as defined by 20 C.F.R. § 416.967(c) with some exertional and non-exertional limitations. See AR 40. In reaching that finding, the ALJ found Dr. Vaghaiwalla's opinion unpersuasive, noting that it conflicted with, or did not account for, Plaintiff's MRI results showing "right shoulder labral tear, partial tendon tear and minimal bursitis" or Plaintiff's "subjective complaints of shoulder pain." AR 49. The ALJ likewise rejected Dr. Shults's opinion that Plaintiff could only frequently use his hands for fine and gross manipulation, noting that the medical evidence showed only that Plaintiff's right shoulder was injured. See AR 52. Although the ALJ found that Plaintiff could only frequently push and pull with his right upper extremity, the ALJ assessed no restrictions on Plaintiff's ability to use his hands for fine and gross manipulation. See AR 40. In reaching his RFC finding, the ALJ relied on the

results of Plaintiff's MRI. See AR 47 (stating that "the claimant has right shoulder pain associated with labral and partial tendon tears as well as minimal bursitis").

### 3.    Legal Standard

At step four of the five-step process, the ALJ must determine the claimant's RFC, which measures the claimant's capacity to engage in basic work activities. See Bowen v. New York, 476 U.S. 467, 471 (1986); Burch, 400 F.3d at 683. The RFC is a determination of "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Although the RFC assessment is ultimately the ALJ's responsibility, it must be supported by substantial evidence. See Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)). The ALJ must "set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999).

### 4.    Analysis

The ALJ's RFC assessment lacks substantial evidentiary support. As noted above, the ALJ found that Plaintiff had no restrictions in using his right hand for gross and fine manipulation. See AR 51. But there is no medical evidence in the record to support that finding. Indeed, the only medical evidence concerning Plaintiff's ability to use his right hand for gross and fine manipulation was Dr. Shults's opinion, see AR 942, which the ALJ rejected, see AR 51.[5] Although Dr. Vaghaiwalla's opinion would have supported the

---

[5] Plaintiff does not assert that the ALJ erred in rejecting Dr. Shults's opinion. But any such claim would fail because the ALJ accurately summarized Dr. Shults's opinion and explained that he found the opinion unpersuasive because it was at odds with Dr. Shults's observations concerning Plaintiff's right-shoulder range of motion and because it lacked any support

ALJ's finding, the ALJ rejected that opinion as well because it did not account for the results of Plaintiff's MRI or his subjective complaints of pain.

Because he rejected the only two medical opinions in the record concerning Plaintiff's physical impairment, the ALJ necessarily based his RFC finding on his interpretation of Plaintiff's MRI results. But an ALJ may not act as his own medical expert because he is "simply not qualified to interpret raw medical data in functional terms." Rivera v. Berryhill, No. 16-0791, 2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)); see also Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Miller v. Astrue, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (ALJs should not act as medical experts); Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJs are not qualified to extrapolate functional limitations from raw medical data).

The ALJ erred by drawing conclusions about Plaintiff's RFC based solely on the MRI results. No medical professional who examined Plaintiff or his medical records offered any opinions about the MRI results or how they impacted Plaintiff's ability to use his right hand for fine and gross manipulation. To the contrary, the results were unavailable when Dr. Shults examined Plaintiff, and the ALJ rejected Dr. Vaghaiwalla's opinion, in part, because it did not account for the MRI results. Nevertheless, the ALJ, who is not a medical professional, not only concluded that Plaintiff's right shoulder pain was attributable to the abnormalities reflected in the MRI but also that those abnormalities did not limit Plaintiff's use of his right hand for gross and

---

concerning the assessed limitations for Plaintiff's left upper extremity. See Dkt. 11-3 at 52; Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) (ALJ can reject medical opinion if he articulates its persuasiveness and explains how he "considered the supportability and consistency factors").

fine manipulation. While the first finding may have been reasonable, the ALJ lacked the requisite expertise to make any independent finding concerning how a labral tear, tendon tear, and bursitis in Plaintiff's shoulder might impact his ability to use his corresponding hand for gross and fine manipulation, let alone how they might impact his ability to climb ropes or push and pull with his right arm.[6] Accordingly, the ALJ should have developed the record to include a medical professional's opinion about how the abnormalities reflected in the MRI impacted Plaintiff's RFC. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended) (ALJ must develop the record when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

Accordingly, remand is warranted with respect to this claim of error.

**B.** **Plaintiff's Subjective-Symptom Testimony**

Plaintiff contends that the ALJ erred in rejecting his testimony concerning the intensity, persistence, and limiting effects of the symptoms of his mental-health impairments. See Dkt. 12 at 9-14. In particular, Plaintiff faults the ALJ for discounting his testimony that he could not leave home without being accompanied by a family member. See id.

**1.** **Plaintiff's Testimony**

At the April 9, 2024 hearing before the ALJ, Plaintiff testified that his mental-health impairments, which included anxiety, mood, and psychotic disorders, among others, impacted his ability to work and interact with others.

---

[6] Notably, Dr. Shults, the only medical professional who personally examined Plaintiff for his physical impairment, believed that Plaintiff's right-shoulder pain was attributable to possible inflammation of the rotator cuff tendons. See AR 941. There is no telling how his opinion would have changed had he known that Plaintiff's shoulder injury was more serious than he believed it to be.

<u>See</u> AR 101-05. According to Plaintiff, he had difficulty even leaving his home and could do so only if he was accompanied by a relative to give him "moral support." AR 104. Before leaving his home, he had to prepare himself to combat his consistent stress, agitation, depression, and paranoia. <u>Id.</u>

### 2. The ALJ's Decision

The ALJ rejected Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms stemming from his medically determinable mental-health impairments. <u>See</u> AR 47. In doing so, the ALJ summarized Plaintiff's complaints, including his allegation that he could not leave home without being accompanied by a family member, as well as the relevant medical evidence in the record. <u>See</u> AR 42-46. The ALJ found that Plaintiff's subjective complaints were not "entirely consistent with the medical evidence and other evidence in the record." AR 47. Specifically, the ALJ noted that multiple medical records reflected that Plaintiff had responded well to medications for his mental-health symptoms and that his ability to engage in daily activities such as shopping, running errands, and managing his finances undercut his testimony that he was incapable of unskilled employment, as well as his purported need for extra supervision. <u>See</u> AR 48.

### 3. Legal Standard

An ALJ's assessment of a claimant's allegations concerning the severity of her symptoms is entitled to "great weight." <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended) (citation omitted); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)), <u>superseded on other grounds by</u> §§ 404.1502(a), 416.902(a).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter v Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter, 504 F.3d at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Id. (citing Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

If the claimant meets the first test, the ALJ may discount the claimant's subjective symptom testimony only if the ALJ makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). But the ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020). Rather, absent a finding or affirmative evidence of malingering, the ALJ must provide a "clear and convincing" reason for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citing Lingenfelter, 504 F.3d at 1036); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, the claimant's (1) reputation for truthfulness, prior inconsistent statements, and other testimony that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) daily activities; (4) work record; and (5) physicians' and third parties' statements. See Rounds, 807 F.3d at 1006; Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's evaluation of a plaintiff's alleged symptoms is supported by substantial evidence in the record,

the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d
at 959.

    **4.**    **Analysis**

    The ALJ offered specific, clear, and convincing reasons for rejecting
Plaintiff's subjective-symptom testimony that he could not leave his home
without being accompanied by a relative. The medical evidence in the record
supported the ALJ's credibility finding. "When objective medical evidence in
the record is <u>inconsistent</u> with the claimant's subjective testimony, the ALJ
may indeed weigh it as undercutting such testimony." <u>Smartt</u>, 53 F.4th at 498;
<u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction
with the medical record is a sufficient basis for rejecting the claimant's
subjective testimony" (citing <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir.
1995))).

    Here, the ALJ properly rejected Plaintiff's subjective-symptom testimony
based on the objective medical evidence contradicting it. First, Plaintiff's
treatment records showed that he repeatedly reported that his symptoms
improved with medication. <u>See, e.g.</u>, AR 889 (Nov. 4, 2022 progress notes
reflecting that Plaintiff had stated that he "ha[d] been doing well with
medication"), 948 (May 3, 2023 reflecting same); AR 1092 (Aug. 9, 2022
progress note reflecting that Plaintiff stated that "his symptoms [were] well
controlled"), 1192 (Nov. 7, 2023 progress report stating that Plaintiff's
symptoms of "depression, anxiety, PTSD and paranoia" had been "stabilized
on psych meds"), 1198 (Sept. 7, 2023 progress report reflecting that Plaintiff
found medications "helpful"). The ALJ was free to rely on those medical
records to reject Plaintiff's testimony that his symptoms prevented him from
doing any work or leaving his home unaccompanied. <u>See Crane v. Shalala</u>, 76
F.3d 251, 254 (9th Cir. 1996) (notes from plaintiff's "treating therapist, and the
evidence suggesting that [plaintiff] responded well to treatment for depression .

. . sufficed to show that the ALJ did not arbitrarily reject [plaintiff's] testimony."); Mead v. Astrue, 330 F. App'x 646, 648 (9th Cir. 2009) ("The ALJ gave specific, clear, and convincing reasons for the credibility finding, including treatment notes indicating that Mead's depression had improved and that she was responding well to treatment. . . ."). Furthermore, progress notes from 2023 to 2024 show that Plaintiff's mental-health symptoms had improved over time, see, e.g., AR 1061, 1064, and his most recent progress notes show that he described his depressive and anxiety symptoms as "low," AR 1058.

Second, as the ALJ noted, the evidence in the record undercut Plaintiff's testimony that his mental-health symptoms rendered him completely incapable of interacting with anyone. See AR 101-02. Indeed, he conceded that he had good relationships with his friends and family, see AR 934, and in May 2023, he took a "family trip" to Las Vegas, although he described that trip as "horrible," AR 946. What's more, Plaintiff had little, if any, difficulty in communicating with medical health providers. See, e.g., AR 495, 882, 884, 933, 1058, 1061, 1063, 1064, 1067, 1072. For example, a psychologist who evaluated Plaintiff in October 2022, noted that Plaintiff was "cooperative" and was "able to establish rapport." AR 884. Similarly, a different psychologist who evaluated Plaintiff in December 2020, reported that Plaintiff "was engaged and cooperative during the evaluation." AR 495. And in April 2023, a third psychologist noted that, despite some anxiety, Plaintiff was "cooperative and maintained "good" eye contact" and that his speech was "clear and coherent." AR 933.

Finally, evidence in the record contradicted Plaintiff's claim that he could not leave home unaccompanied. Indeed, he evidently was able to use public transportation on his own, albeit with some difficulty. See AR 387. Moreover, his family members stated that he was capable of leaving home alone. See AR 328, 373.

In short, the ALJ's stated reason for rejecting Plaintiff's subjective-symptom testimony was supported by the evidence in the record. See Carmickle, 533 F.3d at 1162 (ALJ's rejection of claimant's credibility is proper provided he cites a valid reason that it is adequately supported by the record). Accordingly, remand is not warranted on this issue.

## IV.    CONCLUSION

Based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

Date: May 21, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge